## THE LAURA MADSEN.

### HEINRICI et al. v. THE LAURA MADSEN et al.

(District Court, S. D. California. November 1, 1897.)

1. SEAMEN'S WAGES—SHIPPING ARTICLES—COMPLETION OF VOYAGE.
   Shipping articles described the voyage as "from the port of San Francisco, Cal., to Port Blakeley, thence to San Francisco, for final discharge, either direct or via one or more ports of the Pacific Coast. Either north or south of the port of discharge. Voyage to be repeated one or more times." The vessel proceeded to Port Blakeley, and thence, with a cargo of lumber, to San Pedro, where, after unloading, the master announced his intention of returning to Port Blakeley. The crew thereupon demanded their pay, claiming that the voyage ended at San Pedro. *Held*, that the shipping articles did not permit a return from San Pedro to Port Blakeley before going to San Francisco, and that the seamen were entitled to their wages upon the master's announcement of his intention to return direct to Port Blakeley, and did not forfeit them by leaving the ship upon his refusal of their demand.

2. SAME—TIME OF FILING LIBEL.
   The filing of a libel for wages, after the master has announced his determination to sail for a port unauthorized by the shipping articles, and after the seamen have, in consequence, demanded their wages, is not premature, although they continue at work for several hours longer, and until the vessel is about to proceed to sea.

This was a libel in rem by Ernest Heinrici and others against the schooner Laura Madsen, B. P. Rasmussen, master, to recover seamen's wages.

Jones & Newby, for libelants.
Calvin Edgerton, for claimants.

WELLBORN, District Judge. The claims of the libelants are for wages as seamen on board the schooner Laura Madsen. The case is submitted on an agreed statement of facts, as follows:

At San Francisco, Cal., on the 29th day of March, 1897, each of the said libelants entered into and duly executed articles of agreement with B. P. Rasmussen, then master of the schooner Laura Madsen, or whoever might go as master of said schooner, upon the terms and

conditions set forth in the shipping articles, produced in evidence as Exhibit A. Under said shipping articles, libelants, on said 29th day of March, 1897, as seamen, entered upon the voyage described in said articles from the port of San Francisco, and proceeded direct to Port Blakeley in the state of Washington, where she loaded with a cargo of lumber, and from thence sailed direct to the port of San Pedro, in the state of California. Said schooner arrived at said port of San Pedro on the 21st day of May, 1897, and discharged her cargo on the 29th day of May, at 10 o'clock a. m. After said discharge of cargo, the said master announced to libelants his purpose of sailing with said schooner direct to Port Blakeley, and on the same day took in ballast preparatory to sailing. Said master announced his said intention to sail for Port Blakeley at noon of said day, and the libelants then and there demanded their said wages, but payment was refused. After the said discharge of cargo, said libelants continued on said schooner in the service of the said master until after said schooner had taken in ballast, and assisted in taking in the same. Thereafter, at 3:30 o'clock p. m. of said 29th day of May, said libelants again demanded their pay. The said master refused to pay the wages so demanded, claiming that the voyage had not been ended, and that the libelants were not entitled thereto. At said date and time, to wit, 3:30 p. m., libelants, and each of them, refused to continue longer in the service of said master under the aforesaid shipping articles, and then and there left the said vessel, against said master's consent, said libelants claiming that their voyage was completed, and they were entitled to their wages. The libel in said cause was verified, filed, and the process of the court placed in the hands of the United States marshal for service at about 1:25 p. m. on said 29th day of May, 1897, and said process was duly served at about 6 o'clock p. m. of the same day. It was the intention of the said master (known to the libelants) to clear from the port of San Pedro for Port Blakeley, in the state of Washington, on the afternoon of May 29th, or the 30th at the latest. Said schooner did sail from the port of San Pedro, bound for Port Blakeley, on the 1st day of June, 1897, and libelants each and all refused to sail on said schooner, and remained at San Pedro.

The following entry appears in the log book of the said schooner Laura Madsen:

"Sat., May 29—3/30 p. m.

"Crew refused duty, and left the vessel, claiming that their voyage was up, and demanded their pay for the time that they had been employed.

"B. P. Rasmussen, Master.
"A. Larson, Second Mate."

The libelants served the length of time mentioned in the amended libel, and each has been paid only the sums set out in paragraph 4 of said amended libel, and the several sums alleged to be due are correct, provided the respondents are held liable for any amount whatever. That part of the shipping articles, referred to as "Exhibit A" in the foregoing statement of facts, descriptive of the voyage for which libelants engaged, is as follows:

"* * * The Sch. Laura Madsen, of San Francisco, Cal., * * * now bound from the port of San Francisco, Cal., to Port Blakeley, thence to San Francisco, for final discharge, either direct or via one or more ports on the Pacific Coast. Either north or south of the port of discharge. Voyage to be repeated one or more times."

Another material provision of said articles is as follows:

"It is especially understood and agreed that the wages of the said crew shall not be due, nor any part thereof, nor shall the crew be entitled to receive any portion of their pay, except at the master's option, until the completion of the entire voyage above described; and that, in case any of the crew leave the vessel before the completion of the voyage as aforesaid, the persons so leaving shall forfeit to the owners of the said vessel all the wages due them."

Libelants contend that they had a right to leave the vessel at the time and place they did, for the reason, among others, that the voyage for which they shipped did not include a return from San Pedro to Port Blakeley; and therefore, when the announcement was made to them by the master of the vessel of his intention to return to Port Blakeley, they were justified in leaving said vessel. Respondents insist that libelants, by leaving the vessel at San Pedro, were guilty of desertion, and therefore forfeited their wages; and, further, that the suit was prematurely brought.

The decision in Bradley v. The J. M. Griffith, 71 Fed. 318, with the authorities there cited, I think, determines, in their favor, libelants' contention. If it be conceded (which, however, I do not decide) that the shipping articles allowed the vessel to go from Port Blakeley to San Pedro, no fair construction of the articles would permit the return from San Pedro to Port Blakeley. The voyage is expressly described as being from San Francisco to Port Blakeley, thence to San Francisco, etc. Certainly, this language does not imply that the vessel could go from Port Blakeley to some other point, as, for instance, San Pedro and return to Port Blakeley. Whatever may be the true construction of the shipping articles as to the ports at which the vessel could touch in going from Port Blakeley to San Francisco, it is clear that the articles did not permit a return to Port Blakeley from any intermediate port before San Francisco had been reached. The provision in the shipping articles, "Voyage to be repeated one or more times," does not militate against this conclusion. San Francisco was the port from which the voyage was to commence, and also the port at which the voyage was to end. There could not, of course, be any repetition of this voyage until it was ended, and it could not be ended otherwise than by a return to San Francisco. Nor is said conclusion at variance with that clause of the shipping articles which provides that the duration of the services shall be "for a term of time not exceeding (6) six calendar months." As has been elsewhere said:

"The act for the government and regulation of mariners contemplates two species of contract between owners and seamen: (1) For a voyage or voyages; (2) for a term or terms of time. The latter is undoubtedly the proper form of articles where the destination of a vessel cannot be specifically known, and where the vessel is employed on what is called a 'trading voyage,' or is in search of freight. The first, to wit, that in which the voyage or voyages are specified, applies to designated ports, or particular kinds of voyages, known

and understood to be governed in their extent and duration. The term 'voyage,' like the term 'voyage assured,' is a technical phrase, and always imports a definite commencement and end." Anonymous, 1 Fed. Cas. 1004.

The contract in the case at bar belongs to the first species, and was for a specified voyage, some of the ports designated, others generally described; and therefore the voyage, with the ports so designated and described, must be considered the service to which the libelants bound themselves, and the only effect of the six-months provision was to limit repetitions of the voyage so agreed upon,—that is to say, the voyage could not be repeated oftener than was possible within six months.

The suit, I think, was not prematurely brought. The announcement by the master to the libelants at San Pedro, after the cargo was finally discharged, that he intended to return to Port Blakeley, and the demands thereupon made by the libelants for their wages, were, so far as concerned libelants' rights, a termination of the voyage, or equivalent thereto, and libelants then became entitled to said wages. Rev. St. § 4530. The fact that the vessel was about to proceed to sea before the end of 10 days gave libelants the right to sue immediately. Rev. St. § 4547. The subsequent services of libelants from 10 o'clock a. m. to 3:30 o'clock p. m. of the same day were gratuitous, and no new contracts nor waivers will be implied therefrom.

The foregoing rulings make it unnecessary for me to pass upon any of the other questions raised in the respective briefs of the parties. A decree for libelants will be entered